[Crim. No. 6968. Fourth Dist., Div. One. Oct. 27, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EUGENE BRAY, Defendant and Appellant.

## COUNSEL

Harold F. Tyvoll and Michael Lloyd, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—James Eugene Bray appeals the judgment following his jury conviction on two counts of being a felon in possession of a concealable firearm (Pen. Code, § 12021). At sentencing, the offenses were adjudicated as misdemeanors and Bray was placed on probation for three years.

Bray's meritorious contention is the trial court should have instructed the jury that ignorance or mistake of fact is a defense to the crime.[1]

In 1969 Bray pled guilty in Kansas to being an accessory after the fact (Kansas Statutes Ann. 21-106). At sentencing, the Kansas prosecutor recommended Bray be granted probation because he had no previous criminal record, he had been unwilling to participate in the crime but had gotten involved by driving a friend away from the scene and he had cooperated fully with the district attorney's office. Bray was placed on two years summary probation which he successfully completed before moving to California in 1971. While in California Bray first worked at Convair Aircraft and later was employed by the County of San Diego in the Department of Public Health. Near the end of 1973 he transferred to the district attorney's office.

In January 1972, Bray filled out an application to vote in the State of California. He discussed the problems he had had in Kansas with the deputy of the registrar of voters and asked if he would be allowed to vote. The deputy could not answer the question and suggested he say on the registration form he had been convicted of a felony and fill out a supplementary explanatory form to find out if he, in fact, had committed a felony. This Bray did; he was allowed to vote.

In early July of 1973, Bray applied for a part-time job as a guard with ADT Sterling Security Company. On the application he answered he had been arrested or charged with a crime but had not been convicted of a felony. At the bottom of the page Bray explained the circumstances surrounding his arrest and period of probation. In September he received a notice from the Bureau of Collection and Investigative Services that he had been registered as a guard or patrolman.

---

[1] Bray requested jury instructions from CALJIC reading:

"CALJIC 4.35—IGNORANCE OR MISTAKE OF FACT

"An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime.

"Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such an act or omission lawful.

"CALJIC 1.21—'KNOWINGLY'—DEFINED

"The word 'knowingly' as used in my instructions, imports only a knowledge of the existence of the facts in question, when those facts are such as bring the act or omission within the provision of the law. The word does not require in its meaning any knowledge of the unlawfulness of such act or omission." Here the instruction would have required the jury to find Bray knew he was a felon and knew he had possession of a concealable firearm.

Later in July of 1973 Bray bought a .38 caliber revolver from a pawn shop, Western Jewelry and Loan Company, to use in guard assignments requiring an armed patrolman. On one of the required forms he said he had not been convicted of a felony; on another he said he had not been convicted of a crime with a punishment of more than one year. After the statutory five-day waiting period, the gun was delivered to him.

On September 14, 1973, Bray filled out an application for a job as a contract compliance investigator. In response to the question asking whether he had been convicted of a felony or misdemeanor, Bray answered with a "?". He again explained the circumstances surrounding his arrest and the sentence he received.

On November 16, 1973, and April 12, 1974, Bray filled out job applications for positions as an audio-visual technician and as an eligibility worker I. In each instance he answered he had been convicted of a "felony or misdemeanor;" in each instance he explained his Kansas arrest and sentence.

In July of 1974, two investigators from the district attorney's office conducted a search with a warrant of Bray's house and car. Bray voluntarily led the investigators to a closet where he kept the .38 and a .22 pistol.

In order to gain a conviction under section 12021, the prosecutor must prove: (1) conviction of a felony and (2) ownership, possession, custody or control of a firearm capable of being concealed on the person (*People* v. *Neese,* 272 Cal.App.2d 235, 245. [77 Cal.Rptr. 314]). There was no question here Bray had been in possession of a concealable firearm; there was no question he had been convicted of the crime, "accessory after the fact" in Kansas. Bray says there must be proof he knew he was a felon. Or, in the alternative, he says mistake of fact is a defense and the court erred in denying this requested instruction.

It appears to be a question of first impression whether Penal Code section 12021 requires proof of the defendant's knowledge of his or her felony status, and whether such a prosecution may be defended by showing the defendant lacked knowledge he was a felon. The prevailing trend of decisions is to avoid constructions of penal statutes which would impose strict liability (see *People* v. *Hernandez,* 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d .673, 8 A.L.R.3d 1092] [statutory rape]; *People* v. *Vogel,* 46 Cal.2d 798 [299 P.2d 850] [bigamy]; *People* v. *Winston,* 46

Cal.2d 151 [293 P.2d 40] [marijuana possession]; *People* v. *Stuart,* 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705] [pharmacist misfilling prescriptions]). The Attorney General agrees the statute should not be one of strict liability but then says it is not necessary for the People to prove the defendant had knowledge.

In considering the role of knowledge, whether the defendant knew he had committed an offense is irrelevant (*People* v. *Autterson,* 261 Cal.App.2d 627, 632 [68 Cal.Rptr. 113]; *People* v. *Daniels,* 118 Cal.App.2d 340, 343 [257 P.2d 1038]). The question here is whether the defendant must know of the existence of those facts which bring him within the statute's proscription. Even though section 12021 does not explicitly require knowledge, the defendant must know he has possession of a concealable weapon (*People* v. *Burch,* 196 Cal.App.2d 754, 771 [17 Cal.Rptr. 102]). In addition, as to whether a defendant must know he is an alien under section 12021, this court, in dictum, has said:

"Knowledge that one is in the State of California might conceivably be relevant in the case of a person who unwittingly had overstepped the boundary of a neighboring state, who might have been carried into the state against his will, or as the result of mistake in taking some vehicle of public transportation.

"In the present case, defendant knew he was no longer in Mexico." (*People* v. *Mendoza,* 251 Cal.App.2d 835, 843 [60 Cal.Rptr. 5].)

Likewise, knowledge that one is a felon becomes relevant where there is doubt the defendant knew he had committed a felony. Here, even the prosecution had substantial difficulty in determining whether the offense was considered a felony in Kansas. In arguing to the court the necessity of a Kansas attorney's expert testimony,[2] the district attorney said, ". . . in even our own jurisdiction, let alone a foreign jurisdiction such as the State of Kansas, it's extremely difficult to determine whether a sentence was a felony or a misdemeanor." Although the district attorney had great difficulty in determining whether the Kansas offense was a felony or a misdemeanor, he expects the layman Bray to know its status easily.

---

[2]It was improper to call an expert under these circumstances. When the court must use or interpret the law of a sister state, it is proper to take judicial notice (Evid. Code, §§ 451, 452). Such interpretation is a matter of law in which the judge, using the statutory and decisional law of the state in question, is an expert. If the judge is unable to interpret the sister state's law he should not call in another "expert," in this instance a Kansas attorney. Rather, under Evidence Code section 311 he should use the law of California, or dismiss the action.

There was no doubt Bray knew he had committed an offense; there was, however, evidence to the effect he did not know the offense was a felony. Without this knowledge Bray would be ignorant of the facts necessary for him to come within the proscription of section 12021 (*People* v. *Winston, supra,* 46 Cal.2d 151, 158). Under these circumstances the requested instructions on mistake or ignorance of fact and knowledge of the facts which make the act unlawful should have been given.

Was it reversible error not to so instruct? Here Bray made it clear throughout the trial he was seeking to defend against the charges on the basis he did not know he was a felon. If instructions on ignorance or mistake of fact and knowledge of the facts had been given, the jury would have had the opportunity to find Bray not guilty if they believed he did not know the offense committed in Kansas was a felony. Under these circumstances, it was reversible error to refuse the requested instructions.

This decision should not be interpreted to mean instructions on mistake or ignorance of fact and knowledge of the facts are required every time a defendant claims he did not know he was a felon. Here Bray had been convicted in Kansas of what for California is an unusual crime, "accessory after the fact" and even the prosecutor claimed difficulty in knowing whether it was a felony. In addition, Bray on more than one occasion had been led to believe by state regulatory agencies he was not a felon: he was allowed to vote, he was registered in an occupation allowing him to carry a gun, and he was allowed to buy and register the gun. Throughout the trial, Bray laid the proper foundation for the instructions and he requested them. It is only in very unusual circumstances such as these that the giving of these instructions is necessary.

Judgment reversed.

Ault, J., and Coughlin, J.,* concurred.

A petition for a rehearing was denied November 26, 1975, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied December 24, 1975. Clark, J., was of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.